**In the Matter of The LIBERAL MARKET, INC. an Ohio Corporation, Debtor.**

**Bankruptcy No. 3-81-00305.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Dec. 27, 1982.

Jay A. Rosenberg, Cincinnati, Ohio, for Creditors' Committee.

Peter Donahue, Dayton, Ohio, for debtor.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

This matter is before the Court for consideration of two fee Applications for professional services rendered by two accounting firms in the course of Debtor's Chapter 11 reorganization. The Court initially heard the applications on 3 August 1982. On 18 October 1982 the Court issued a Decision and Order allowing only 80% of the instant fee requests because of lack of verification and itemization of the billing charges. The Court, however, also ordered that the Applicants be granted two weeks leave to amend their respective applications to further document the alleged services, and that, if so amended, the Court, within its discretion, would adjust the allowances accordingly. The Applications were subsequently amended, and are now again before the Court for determination whether the earlier allowance should be increased.

■ The Court notes that apparently neither accounting form consulted with or was represented by legal counsel regarding this matter. Both accounting firms place great emphasis upon the itemization of time expended, which is not drawn in question by the Court. As other professionals are fully aware, especially attorneys, the time expended is only one factor in a determination by a court of whether limited, and often meagre, funds are to be diverted from creditors of an estate. Such is the reason that fee allowances are deemed a judicial function. All fee allowances, therefore, are a subject of court determination and a balancing of interests. All participants are controlled by the same principles, not just attorneys. The problem *instanter* is not presented as an adversarial matter for a question of unscrupulous overreaching. The basic problem is the unrestricted nature of the employment on a "general retainer." Such practice conflicts with established precedents, particularly in this Court; and the scope of the employment should have been specific so as to avoid the present

dilemmas. See S.D. Interim Bankruptcy Rule No. 2006. Henceforth, this Court will not condone the practice of employing accountants on a "general retainer." The scope and details of employment as approved by the court at the time of employment will control in weighing the necessity and value of services rendered.

■ For the sake of brevity, the concerns regarding the allowance of professional fees as elaborated within this Court's decision of 18 October 1982 are incorporated herein without repetition. The Court does emphasize, however, that the burden of proof in all fee matters is on the applicants and that the basic Court inquiry regarding professional fees is the *quantum meruit* value of the services as guidelined in 11 U.S.C. § 330(a)(1).

The Application of Alexander Grant and Co. (hereinafter "Alexander") request allowance of $35,502.50 for "services rendered." Alexander was put on "general retainer" as accountant for Debtor in Possession under a general order which left Alexander's duties within the discretion of Debtor in Possession and which did not cover any details of compensation. In its earlier decision, the Court allowed $28,402.00 of Alexander's request. Alexander has supplemented its earlier Application by cover letter totalling the hours spent and amount charged for "the four projects." Each project is then documented by a separate "exhibit" constituting copies of employee "time sheets" for time billed on the projects. The records do not itemize the (approximately one thousand) alleged hours of service, and, aside from a general description captioning each "exhibit," there is no indication what the substance of the services involved.

■ Upon review of the record (and with specific caution for future applications omitting essential itemization), the Court nevertheless finds that the *quantum meruit* value of Applicant's efforts appears reasonably in accord with the instant fee request. The finding is particularly necessitated by the overly general Order of Appointment

which omits both details of compensation and duties. The Court notes in this regard, however, that Alexander's billing records are extensive and appear to have been accurately maintained, and also generally correspond with the Court record and indicate substantial and lengthy service on Debtor's behalf. Most significantly, the Court also notes that there were no objections of record to allowance of the fee as requested by any interested parties especially the Debtor in Possession, which engaged the services and from whose estate the claim must be paid.

IT IS, THEREFORE, HEREBY ORDERED that upon review of the record, Alexander Grant and Co. is allowed an aggregate fee of $35,502.50, as requested.

Deloitte, Haskins and Sells (hereinafter Deloitte) has applied for $6,360.00. Deloitte was employed as accountant for the Official Unsecured Creditor's Committee "to examine the books, records and certain transactions of the Debtor and its operation of the business, and to prepare reports and summaries which will assist the Official Creditor's [*sic*] Committee in performing its duties." See Application to Employ Accountant, filed on 9 March 1981. In the decision of 18 October 1982, the Court allowed $5,088.00. Deloitte has subsequently supplemented its earlier Application with an itemization of time spent. Debtor in Possession objected at the 3 August 1981 hearing to full allowance of Deloitte's request, and reasserted its objection to further allowance subsequent to the Court's decision. In light of the results obtained in the Plan of Reorganization as confirmed by this Court and the nebulous scope of the employment, counsel for the Debtor was constrained to point out very serious questions as to the value of the services rendered in the results obtained. The Court heard the objections at a hearing held on 23 November 1982.

Debtor in Possession argues that the Court's earlier allowance more than reasonably compensated Deloitte. Debtor generally argues that Deloitte's services did not supply any information which was beneficial to Debtor or Debtor's estate, and that the *quantum meruit* value of the services does not correspond to the fee request. Debtor also argues that some of Deloitte's services were "duplicative, and ten hours were spent at Committee and Court hearings."

It is the opinion of the Court that Deloitte's itemization of services indicates that the work performed was probably within the scope of duties for which Deloitte was employed. Deloitte was employed by, and under the direction of, the Unsecured Creditors' Committee. Although in retrospect the work performed may arguably have been unnecessary, it is the opinion of the Court that it was not unreasonable for the Unsecured Creditors' Committee to request that Deloitte perform the tasks for which Deloitte was employed. Unfortunately, the Creditors' Committee was not represented at the hearing to make this clear. The objections of record focus upon the "*de minimus* value" of the services to Debtor's estate. The key inquiry, however, should be the value of the services to the Unsecured Creditors' Committee, *qua* employer. In this regard, Debtor, though a *bona fide* interested party, possesses only a limited interest of assuring that, in essence, the Unsecured Creditors' Committee received the services for which the compensation is requested. Absent unusual circumstances, such judgment should be reserved for the discretion of, in this instance, counsel for the Unsecured Creditors' Committee. If, for example, an unsecured creditors' committee requests attendance by an accountant at a court hearing because of the possible necessity of reference to accounting documents, often prepared by the accountant, the fact that the accountant's services ultimately proved unnecessary (a fact not in advance ascertainable) would not reflect upon the *quantum meruit* value of the "service" of attendance at the court hearing. If, on the other hand, a question arose because the documents were confused and the accountant ill-prepared, such ill-preparation would validly reflect upon the *quantum meruit* value of such service.

In this case, Deloitte's services appear to have been reasonably performed and have not been questioned by the Unsecured Creditors' Committee. A questionable itemization is a charge for 62.5 hours of "field work" essentially to collate Debtor's records. It is the opinion of the Court, however, that given the many locations of Debtor's operation and the alleged confused state of the records that this amount of time would appear reasonable as inferable from the records.

IT IS, THEREFORE, HEREBY ORDERED that based upon review of the record, Deloitte, Haskins and Sells is allowed an aggregate fee of $6,360.00, as requested; and attorneys and accountants are on record in future cases to exercise more caution and specificity in the commitment of estate funds.